WILLIAMS, Judge.
This suit originally sought recovery of workmen’s compensation benefits and damages for the alleged wrongful death of Wimberly Day. The plaintiffs are Billy Jean Morgan Day, surviving wife of the deceased, appearing individually and as tu-trix of the minor, Wimberly Day, Jr.,' and Annie Lou Cloud Casady, divorced wife of the deceased, appearing individually and as the duly qualified natural tutrix of the minors, Cynthia Gale Day and David Jerone Day. Originally named as defendants were Day’s employer, Campbell-Grosjean Roofing and Sheet Metal Corporation, its insurer, Employers Liability Assurance Corporation, and Elvis F. Hamous. Also named defendants were Ruble Wright, his employer, Home Transportation Company, and its ihsurer, Transport Insurance Company. The suit against Hamous was dismissed at the time of the trial. After trial on the merits, judgment was rendered in favor of Billy Jean Morgan Day, individually and as tutrix of the minor Wimberly Day, Jr., for benefits payable under the Louisiana Workmen’s Compensation Act against Campbell-Grosjean Roofing and Sheet Metal Corporation and Employers Liability Assurance Corporation. The judgment rejected the demands of all plaintiffs in tort and all have appealed only insofar as their demands against Ruble Wright, Home Transportation Company and Transport Insurance Company were rejected. Appellant Billy Jean Morgan Day, individually and as tutrix of the minor Wimberly Day, Jr., has neither appeared nor filed a brief in this court. Under authority granted by Rule VII, sec. 5 (b) of the Uniform Rules of the Courts of Appeal, her appeal is considered abandoned and is dismissed. The only question before this court is the tort claim of the two minor children represented by their mother and tutrix, Annie Lou Cluou Casady.
On November 8, 1967 Wimberly Day, age 33, was a passenger in a Chevrolet pick-up truck owned by his employer and being driven by Elvis F. Hamous. Day and Hamous, sheet metal workers, had worked on a job in Baton Rouge and were returning to their homes in Alexandria, Louisiana on Highway 190. Approximately 20 miles west of Baton Rouge the truck in which they were riding went out of control and struck a trailer truck parked on the north shoulder of the highway, instantly killing Day. The accident occurred after dark about 7 o’clock.
Plaintiff maintains the district court erred in failing to find any negligence on the part of Ruble Wright which contributed to the accident and the resulting death of Wimberly Day. Plaintiff’s position is that the accident was caused by the negligence of Ruble Wright who was the driver of a 1963 Chevrolet truck which was blocking the entire inside westbound lane of traffic, and that Hamous veered to the right to avoid striking Wright’s truck, then went out of control, striking the parked vehicle. In his written reasons for judgment the trial judge found that the accident was caused solely by the negligence of Elvis Frank Hamous and that Wright was not negligent.
At the point of the accident Highway 190 is a four-lane highway running east and west. A slight distance to the east is an intersection of Highway 190 and Louisiana Highway 413 marked by a flashing caution light. The eastbound and westbound portions are each 26 feet wide and are separated by a 17 foot median. On the north side of the highway are a gas station, cafe, motel and an old swimming pool. A truck stop is located on the south side of the highway.
Ruble Wright testified he was driving a Chevrolet flat bed truck approximately 27 or 28 feet in length. He had unloaded some machinery near Convent, La., earlier *40 in the day and was enroute to Alexandria when he decided to spend the night at the motel. He stopped to get a room but learned that he should check across the highway at the truck stop. He walked across the highway, ate supper, obtained a room, and returned to his truck for his baggage. In preparing to cross the highway into the parking area, he stated:
“I pulled on the shoulder of the road a few feet. And stopped and looked each way and there wasn’t anything coming from the west but there was a light of one vehicle coming from the east, about a half a mile or farther. About as far as I could see up the highway.” (Tr. p. 123)
He further testified:
“I pulled in a little angle position, into the cut-off. And just as I pulled into the cut-off, there was a car pulled out on the south side, heading east, turned his lights on. So I had to check up there in the crossover till he got by.”

“Well, I stopped there, waiting for the vehicle to come by that had pulled out on the other side. I was in the cut-off then. I heard some tires squeal back up the road a good ways from me. This vehicle went by and I went on across. As I went across, I heard tires squeal again and I pulled into the truck lot and stopped, the parking lot of the truck stop, and about the time I got stopped I heard a noise. I got out and there was a pick-up that run into the back end of a truck and trailer. It was parked about 75 or 100 yards from the cut off on down on the north side of the highway * * *” (Tr. p. 126-127)
The deposition of Elvis Hamous was taken in Texas and made a part of the record in this case. He stated he was driving in the outside lane about 65 miles per hour when he saw a truck pull out into his lane of the highway. Hamous stated he changed lanes and decreased his speed at the caution light. The truck then turned left without a signal from the right hand lane across his path. He stated he hit his brakes and pulled to the right to avoid a collision, missing the truck by about five feet. He then tried to avoid the gas pumps in front of the station but was unable to avoid striking the parked vehicle.
There were two eyewitnesses to the accident. Bobby Ray Smith, driver of the parked truck, testified that he was talking on a telephone attached to the front of the cafe. He stated:
“Well, at the time that I heard the racket of the car, I happened to look and I seen what he was trying to do. He was trying to stop before he hit this other truck, on account of the right lane had some traffic in it and I don’t know what had happened but the brakes quit squealing at one time, I’d say for five or six seconds. And then I heard them again, he applied his brakes again and he was doing all he could to keep from hitting that bobtail truck and at the same time he dove behind the bobtail truck, well I seen what had happened, he had lost control of the truck and then that’s when he came on over and hit my truck * * *” (Tr. p. 153-154)
Smith further testified that the truck driven by Wright had the left or inside lane completely blocked when the pick-up went behind him, that the pick-up was going at a high rate of speed, and that there was other eastbound traffic.
A second eyewitness to the collision, Daniel A. Horner, also testified, but his observations were indefinite and inconclusive and added little to Smith’s. He did not remember seeing a truck waiting to turn left.
Sergeant Thomas G. Guerin of the Louisiana State Police assisted in the investigation of the accident. He testified that the physical evidence indicated that the pick-up was going at a high rate of speed.
*41 Our review of the record has convinced us that the trial judge erred in his conclusion that the accident was caused entirely by the negligence of Elvis F. Hamous. We find that Ruble Wright was also negligent and that his negligence was a contributing cause of the death of Wim-berly Day.
We hold that under the circumstances disclosed by this record, Ruble Wright’s act of pulling out from a parking area, angling across a heavily traveled highway, and then attempting a left turn while driving an oversize vehicle which completely blocked, as the record shows, the entire inside lane of traffic constituted negligence. Hamous was confronted with an emergency contributed to by the negligent act of Wright and his own speed. It therefore follows that Wright, his employer and insurer are responsible for the resulting damages and fatal injuries suffered by Day.
We now approach the question of quantum. The sole remaining plaintiff, Mrs. Annie Lou Cloud Casady, was previously married to Wimberly Day, but this marriage was dissolved by divorce in 1963 and she has remarried. There were two children born of her marriage to Day: Cynthia Gail Day, born in 1954 and David Jerone Day, born in 1959. The record discloses that the children make their home with their mother and stepfather and saw their natural father infrequently. He kept in touch with them by telephone but made no regular contributions to their support. On the occasions of his visits, he would sometime give them or their mother money or make purchases for them. Before Day’s death the children’s stepfather had begun adoption proceedings, but these were halted when Cynthia objected to her name being changed. Their mother testified that both children were upset by their father’s death, particularly the little girl.
The foregoing facts present unusual circumstances which must be considered in arriving at a fair and adequate award for the two minor children. Accordingly, we conclude that an award of $4,000 each to the minor children is reasonable.
For the reasons assigned that portion of the judgment appealed which rejected the demands of plaintiff Annie Lou Cloud Casady, individually and as tutrix of the minors Cynthia Gail Day and David J. Day against Ruble Wright, Home Transportation Company, and Transport Insurance Company is reversed and set aside, and there is now judgment in favor of plaintiff Annie Lou Cloud Casady, tutrix of the minor Cynthia Gail Day and against Ruble Wright, Home Transportation Company and Transport Insurance Company for $4,000 with legal interest from date of judicial demand until paid. And further, there is now judgment in favor of plaintiff Annie Lou Cloud Casady, tutrix of the minor David J. Day, and against Ruble Wright, Home Transportation Company and Transport Insurance Company for $4,000 with legal interest from date of judicial demand until paid, and for the costs of this suit, including the costs of this appeal.
The appeal of Billy Jean Morgan Day, individually and as tutrix of the minor, Wimberly Day, Jr., is dismissed.
Reversed in part and judgment rendered.